1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EUGENE BEAUREGARD, SUSAN
BEAUREGARD, (husband and wife),

          Plaintiffs,

       v.

LEWIS COUNTY WASHINGTON et al.,

          Defendants.

Case No. C05-5738RJB

ORDER ON MOTIONS
FOR SUMMARY
JUDGMENT

     This matter comes before the court on Plaintiffs' Motion for Declaratory Judgment as Partial Summary Judgment (Dkt. 64) and on Defendants' Motion for Summary judgment (Dkt. 67).  The court has considered the motions, responses and replies, and the remainder of the file herein.

<u>PROCEDURAL HISTORY</u>

     On November 4, 2005, plaintiffs Eugene and Susan Beauregard filed a civil complaint against defendants Lewis County Washington and the Lewis County Sheriff's Office.  Dkt. 1.  On January 4, 2006, plaintiffs filed an Amended Complaint, adding the Lewis County Board of Commissioners as defendants. Dkt. 6.  On April 28, 2006, plaintiffs filed a Second Amended Complaint, adding as defendants the Lewis County Sheriff, Lewis County Assessor, Lewis County Commissioner for District One, the Lewis County Commissioner for District Two, the Lewis County Commissioner for District Three, Robert Johnson (in his capacity as Director of Lewis County Community Development), and Fred S. Chapman (in his capacity as Lewis County Building Official).  Dkt. 33.

The Second Amended Complaint alleges that (1) in 1993, plaintiffs Eugene and Susan Beauregard, who are African American and Japanese American respectively, purchased a 15 acre parcel of property near the town of Pe Ell, in Lewis County Washington (Wells Road Property); (2) the population of Lewis County is overwhelmingly White, with .6% Black or African American, and 1% Asian; (3) plaintiffs spent money to develop portions of the Wells Road Property for the purpose of fabricating art objects and/or "to sub-divide, develop, and/or build upon, and/or sale and/or lease portions of this property to the general public;" (4) "[s]ince 1993, Plaintiffs have been warned repeatedly, by white people who reside in the Pe Ell area, that if Plaintiffs should attempt to establish permanent retirement residence within the Pe Ell area, they (Plaintiffs) would place themselves in jeopardy of injury to their property and themselves due to their status as members of a colored race;" (5) on June 8, 2000, Mr. Beauregard made a verbal complaint of harassment and racial discrimination against employees of Lewis County government in the Lewis County Planning and Community Development Department and the Lewis County Environmental Health Department; (6) on June 19, 2000, Mr. Beauregard provided notice to the Lewis County government regarding plaintiffs's plans for developing the property at issue and for their business plans for the property; (7) on July 19, 2000, prosecuting attorney David I. Gedrose notified Mr. Beauregard that a review of policies and procedures had been initiated to address complaints like Mr. Beauregard's June 8, 2000 civil rights complaint; (8) on July 14, 2000, Mr. Beauregard reported to the Lewis County Prosecutor's Office that he had received a "plenteous" assortment of racial literature in the mail at his Pe Ell mailing address; (9) beginning on November 17, 2000, employees of the Building Division of Lewis County Community Development harassed Mr. Beauregard when they entered false statements and false accusations into the Lewis County Building Permit file under permit #9603031, and officials and employees of the Lewis County government have maintained false and incomplete records for the specific purpose of harassing and causing deliberate undue hardship and burden for plaintiffs; (10) beginning on January 24, 2001, employees of the Lewis County government have continually and repeatedly threatened plaintiffs "with the undue and oppressive exercise of Defendants [sic] governmental police powers for the improper purpose of harassing Plaintiffs, and placing them under undue duress, and for the ultimate purpose of inducing them to abandon their plans to establish a retirement residence in Lewis County;" (11) beginning on March 16, 2001, and continuing, officials of Lewis County government, including County

Building Official Fred S. Chapman and Thurston County Building Official Joseph W. Butler,  have taken action with the ulterior motive of racial retaliation, including denial of equal access to services within Lewis County government agencies, causing them a burden in the cost of developing and use of their property; (12) beginning September 13, 2002, the Lewis County Sheriff's Office failed and/or refused to investigate and properly document plaintiffs' complaint of a series of thefts and burglaries of plaintiffs' properties; (13) employees of the Lewis County Sheriff's Office have refused to enforce or abide by court orders issued for the benefit of plaintiffs; and (14) beginning on February 4, 2003, officials and employees of the Lewis County Sheriff's Office have improperly come on to plaintiffs' property in the course of a civil property dispute, without cause and for the purpose of harassing and threatening Mr. Beauregard to induce plaintiffs to abandon the property.  Dkt. 33, at 4-10.  The Second Amended Complaint alleges the following causes of action: violation of 41 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C § 1983, 42 U.S.C. § 1985, the Commerce Clause of the U.S. Constitution, the Thirteenth  Amendment of the U.S. Constitution, and the Fourteenth Amendment of the U.S. Constitution; a state law claim under RCW 42.17, the Washington Public Records Act; a state law claim for tortious interference with plaintiffs' economic and business expectancy.  Dkt. 33, at 12-19.  It appears that plaintiffs also request relief for violation of Article 1, Section 3 of the Washington Constitution.  Dkt. 33, at 17.

<u>RELEVANT FACTS</u>

The court has reviewed the record, including all documents filed in support of and in opposition to the motions for summary judgment.

*Facts Related to Sewage Permit*.  On October 6, 1995, plaintiffs received initial approval from Lewis County's Environmental Services department for a sewage system permit for the Wells Road property. Dkt. 65, Exh. H.  In March of 2000, Cheryl McGee sent plaintiffs a letter, informing them that the septic system was in a non-approved status due to failure to submit a bacteriological analysis.  Dkt. 653, Exh. N.  Plaintiffs stated that, on May 14, 2000, the Department of Health issued a document that concluded that the bacteriological analysis was satisfactory.  Dkt. 65, at 6.

Plaintiffs stated that, in April and May of 2000, Mr. Beauregard went to Lewis County Environmental Services, attempting to obtain a final inspection form for the sewage disposal system, but that he was informed that the permit file was misplaced or otherwise unavailable. Dkt. 65, at 7.  On June

8, 2000, Mr. Beauregard and staff at Lewis County Environmental Services became involved in a heated

verbal exchange, apparently related to Mr. Beauregard's request to know whether his permit had been

approved and his request for a copy of the permit. Dkt. 65, Exh. XX, YY, ZZ, and AAA; Dkt. 75,

Declaration of Fred Chapman; Dkt. 75, Exh. 1. Mr. Beauregard apparently believed that he had been

spoken to in a rude manner; and the staff believed that Mr. Beauregard had treated them in a rude and

belligerent manner. Dkt. 75, Exh. XX, YY, ZZ, and AAA; Dkt. 75, Declaration of Fred Chapman; Dkt.

75, Exh. 1.

On June 8, 2000, Mr. Beauregard made a verbal complaint to Kathleen Eussen,  Acting Director of

Lewis County Environmental Health Division, and with Tammy Devlin, Lewis County Risk Manager,

informing them that he had been harassed by county employees.  Dkt. 65, at 8; Dkt. 65, Exh. P.  In

plaintiffs' declaration in support of their motion for declaratory judgment as partial summary judgment,

they state as follows:

    27.    Based upon the information he learned in the conversation on June 8, 2000 with Kathleen Eussen and Tammy Devlin, Eugene Beauregard determined that Lewis County considered itself a "white" county.

    28.    In matters of racial diversity, the Lewis County Board of County Commissioners was publicly identifying Lewis County as follows:–"Racially, Lewis County is one of the least diverse counties in the state.  Washington State is 87 percent white; Lewis County is 97 percent white.  However according to the Census Bureau statistics the non-white population increased at a 28 percent rate in the 1980's while the white population increased by only 7 percent." *(The Lewis County Comprehensive Plan as approved June 1, 1999 by the Lewis County Board of County commissioners and amended April 2, 2002, Section entitled Demographics and Economics: "Ethnicity").* [Answers to Plaintiffs' Request for Admissions To Defendant Lewis County Commissioner For District One, Para. A1. Admitted]

    29.    Based upon the information he learned in the conversation on June 8, 2000 with Kathleen Eussen and Tammy Devlin, Eugene Beauregard determined that Lewis County government was aware and informed of a general climate of harassment by the County's almost exclusively "white" workforce reacting to an increasing racial-minority presence within the county population.

    30.    Based upon the information he learned in the conversation on June 8, 2000 with Kathleen Eussen and Tammy Devlin, Eugene Beauregard determined that "black males" were particularly pre-judged by many Lewis County's employees as persons having a character and nature predisposing said "black males" to be particularly prone to be "threatening".

    31.    Based upon the information he learned in the conversation on June 8, 2000 with Kathleen Eussen and Tammy Devlin, Eugene Beauregard determined that the motivation for the harassing behavior by Lewis County employees was a generalized attitude of white racial privilege and prejudgments.  Beauregard determined that this generalized attitude was born of a preference in Lewis County for racial/cultural isolation and a perception of racial-minority political impotence.

1
2
       32.     Eugene Beauregard then alleged civil rights violations based upon race by the Environmental Health Division of the Lewis County Health & Social Services in his verbal complaint to Kathleen Eussen and Tammy Devlin.

3  Dkt. 65, at 8-9.  *Emphasis in the original.*

4       On June 19, 2000, Mr. Beauregard sent a letter to Lewis County prosecuting attorney David I.

5  Gedrose, requesting that Mr. Gedrose answer questions about (1) why his sewage permit file was diverted

6  from Cheryl McGee to Steven J. Garrett, rather than routinely handled as Ms. McGee had informed him  in

7  a March 25, 2000 letter; (2) what safeguards exist to prevent disparate handling of official regulatory

8  permits; (3) whether Lewis County policy allows Permit Technicians to arbitrarily decide on which form to

9  issue final sewage permitting approval; and (4) whether it is the policy of Lewis County to invoke police

10  action against members of the public who simply question its procedures, and, if not, what supervisory

11  safeguards exist to prevent clerical level personnel from abusing this resource.  Dkt. 65, Exh. P.  On July

12  19, 2000, Mr. Gedrose sent Mr. Beauregard a letter, informing him that the Health and Community

13  Development departments were developing policies and procedures to address the kinds of questions Mr.

14  Beauregard had identified.  Dkt. 65, Exh. O.

15       *Facts Related to Building Permit.*  On November 17, 2000,  Curt Manchas, a Lewis County

16  Building Inspector, and William Cavinder, a Lewis County Code Compliance Officer, conducted a site

17  inspection of the Wells Road property.  Dkt. 65, Exh. Q and W.  On January 12, 2001, Mr. Beauregard

18  sent a letter to Connie L. Robins, Chief Administrative Officer, notifying her that her employees had filed a

19  Lewis County Dept. of Public Services inspection Report on November 17, 2000 that contained a narrative

20  with five or more materially false statements relating to him and his Wells Road property.  Dkt. 65, Exh. Q.

21  On January 30, 2001, Mr. Beauregard filed a complaint, stating that he should not have been subject to a

22  re-inspection fee because he was not provided with a written notice identifying the source of the reason for

23  a failure related to wallboarding; and that his fencing did not violate code.   Dkt. 65, Exh. R.  The

24  complaint further identified the following statements from the Inspection Report that Mr. Beauregard

25  claimed were false:

26       Mr. Beauregard asked Curt and Bill...a glazing question but was real evasive and non-specific to their questions.

27
28       Mr. Beauregard referred to his workshop carport as the house - he stated that in the future the whole house was going to have solar energy panels installed and that the whole house would be wired and heated by the solar panels.

ORDER
Page - 5

NOTE TO FRED FROM CURT: I think the walls in front of and the look of the structure on site exceed the perimeters of the permit that was issued to Mr. Beauregard.

At one time Mr. Beauregard referred to his workshop carport as the house.

Dkt. 65, Exh. R, at 2-3.  It appears that the main issue regarding the inspection was whether the structure Mr. Beauregard was building was different from that authorized by the building permit.  It appears that the county officials believed that the building permit authorized construction of a workshop, not a home; that Mr. Beauregard was building a home instead of a workshop; and that the code requirements for a home were more stringent than were the requirements for a workshop.  See Dkt. 75, Exh. 3.  Plaintiffs contend that the building they were constructing was a workshop.  Dkt. 65, at 3-5.

On January 24, 2001, Lewis County Building Official Fred S. Chapman sent a letter responding to Mr. Beauregard's complaint.  Dkt. 65, Exh. S.  Mr. Chapman informed Mr. Beauregard that there was a substantial difference in code requirements for a dwelling unit versus a workshop, that the building requirements for affixing wallboard were correct and should be followed, and that a permit was required for construction of a fence over six feet.  *Id.*  Mr. Chapman informed Mr. Beauregard that, if these issues were not addressed within 30 days from the receipt of the letter, he would be forced to issue a Stop Work order on the dwelling and fence.  *Id.*

On February 13, 2001, Michael Zengel, Director of Lewis County Community Development, sent a letter to Mr. Beauregard, informing him that a Stop Work Order had not been issued; that the County had decided to remove its personnel from the process and refer it to an outside agency for review and consultation; and that, because all government files are public records, they cannot be removed from the file.  Dkt. 65, Exh. U.  The matter was referred to Thurston County, pursuant to an intergovernmental agreement for services.  Dkt. 65, Exh. V.

On June 21, 2001, Thurston County Building Official Joseph Butler sent a letter to Mr. Zengel, informing him that Thurston County Development Services had completed its plan review of the Beauregard building project, and made substantive comments.  Dkt. 65, Exh. X.  The letter stated that the materials in the file indicated an application for a building permit to construct a workshop with a covered roof deck with an attached or adjacent carport; the drawings as submitted were not of sufficient clarity or completeness to allow a detailed review of the building plans for compliance with applicable code provisions for construction of a workshop; and it appeared that the building did not comply with the

conventional light-frame construction design provisions of 1997 Uniform Building Code Section 2320. *Id*. The letter identified ten other items which did not comply with code. *Id*. In addition, the letter noted that the drawings were not of sufficient clarity or completeness to allow a detailed review of the building plans for compliance with applicable code provisions for construction of a single family residence, and noted that the previously identified ten items would also apply to a single family residence. *Id*. Finally, the letter noted that the drawings did not show compliance with residential life-safety code requirements such as location of smoke detectors and emergency escape windows. *Id*.

Plaintiffs have submitted no evidence that a Stop Work order was issued regarding the Wells Road property. By January of 2003, plaintiffs completed the workshop. Dkt. 65, at 18-19.

*Public Records Request*. On November 14, 2005, deputy prosecuting attorney Douglas P. Ruth sent a letter to Mr. Beauregard regarding records Mr. Beauregard had requested. Dkt. 65, Exh. Y. The letter indicated that six pages had been withheld from disclosure on the basis of attorney-client privilege. *Id*.

*Property Dispute*. On June 19, 2000, Mr. Beauregard made a vandalism report to the Lewis County Sheriff's Office, complaining that someone had tampered with plaintiffs' potable water tank and had broken a water line. Dkt. 65, Exh. N. Apparently, the Deputy Sheriff who responded to the complaint advised Mr. Beauregard that the City of Pe Ell had had a similar occurrence involving some high school pranksters. *Id*. Mr. Beauregard later discovered that someone had accessed his locked pump house. He believed that certain local residents thought that, if plaintiffs did not have potable water on their property, they would become discouraged and leave; and that it was reported to him that there was "a wide spread sentiment favorable to the 'white supremacy' concept in the area, and many people wondered why under those circumstances I would want to live there." *Id*.

In September of 2002, Mr. Beauregard complained to the Lewis County Sheriff that he believed that his neighbors, the Hillocks, had trespassed on his property, and that "these illegal entries have escalated from mere trespassing to now the frequent theft of large amounts of water and some inexpensive building tools." Dkt. 65, Exh. KK. Mr. Beauregard informed the Sheriff that he based his belief on the following: (1) Mr. Hillock had told Mr. Beauregard that Mr. Hillock had had difficulty obtaining water for his house; (2) that Mr. Hillock had attempted to learn to apply stucco from Mr. Beauregard but that the

larger tools were too awkward for Mr. Hillock to use, and that smaller stucco knives were missing from Mr. Beauregard's property; (3) that the Hillocks' four German Shepard dogs are allowed to run free, "surround Mr. Beauregard's truck "and try to appear intimidating by barking and lunging"; and (4) that Mr. Hillock had told Mr. Beauregard that the male dog was "trained to attack anyone that he sees with a sidearm weapon".  Dkt. 65, Exh. LL.  Mr. Beauregard informed the Sheriff that he had never had a sidearm in Mr. Hillock's presence.  *Id.*  Finally, Mr. Beauregard informed the Sheriff that "during the period between Nov 2000 and March 2001 I found dog hair inside of the building, had frequent flea infestations and mice.  These stopped after March 2001.  But most importantly, it would be extremely difficult for a stranger to get past four high strung dogs undetected."  *Id.*

Plaintiffs became involved in a property dispute, apparently involving an easement, with the Hillocks sometime in 2003.  See Dkt. 65, Exh. CC.   Both plaintiffs and the Hillocks were represented by counsel regarding the property issues.  Mr. Hillock complained to the Sheriff.  *See* Dkt. 65, Exh. DD, Incident Report of February 4, 2003; Dkt. 65, Exh. GG, Incident Report of March 28, 2003; Dkt. 65, Exh. EE, Incident Report of July 4, 2003; Dkt. 65, Exh. HH, Detail Incident Report of March 19, 2004.  Sheriff's officers responded to the complaints, talked to both Mr. Beauregard and Mr. Hillock, and informed Mr. Beauregard and Mr. Hillock that the matter should be resolved through their attorneys and dealt with through civil court. See Dkt. 65, Exh. GG.  During the March 19, 2004 Incident Report visit, Deputy Chris Rubin stated as follows:

> After talking with him [Mr. Beauregard] a short time longer, he went on to explain that there was an injunction and a restraining order against Ms. HILLOCK and he had access to the driveway and this was stated in the order set by the court.  He said they would not be finalized until after the court concluded.  I explained to Mr. BEAUREGARD that I had contacted my dispatch center and they could not confirm the orders in the system.  I then talked with him a short time longer and suggested if he did have those orders, he should have them with him at the property and that way he could show a future Deputy the paperwork and explain to them about the incident.  He said that was a good idea and he would get his paperwork together and have it with him at the property, just in case for next time.

Dkt. 65, Exh. HH, at p. 3.  Plaintiffs contend that the Lewis County Sheriff and his deputies injected themselves into the property dispute on behalf of the Hillocks.  Dkt. 65, at 41.

On July 4, 2004, Mr. Beauregard wrote a letter to Sheriff McCroskey, inquiring whether aerial surveillance "can be made available to help identify and apprehend the person(s) who have periodically and continually burglarized my property in that location."  Dkt. 65, Exh. MM. On July 7, 2004, Sheriff

1  McCroskey wrote a letter to Mr. Beauregard, informing him that the Lewis County Sheriff's Office does

2  not maintain aerial surveillance anywhere in Lewis County on a regular basis, and that, if Mr. Beauregard

3  would be interested in specific law enforcement aerial surveillance, he would provide him with the cost for

4  the service.  Dkt. 65, Exh. NN.

5        In October of 2005, Mr. Beauregard attempted to obtain a road approach permit to widen the road

6  approach to the Wells Road property, apparently over land owned by the Weyerhaeuser Company.  Dkt.

7  65, at 52.  Director/County Engineer Mark R. Cook denied the request on November 3, 2005 pursuant to

8  a state statute and Lewis County Code.  *Id.* at 53; Dkt. 75, Exh. 10.  The Superior Court apparently

9  declined to provide plaintiffs the relief they had requested.  *Hillock et al v. Beauregard et al v. Merrill et*

10  *al*, Lewis County Superior Court No. 03-2-00924-3.  *See* Dkt. 72, at 8-9.  The Washington Court of

11  Appeals apparently affirmed the Superior Court order.  *Hillock et al v. Beauregard et al v. Merrill et al*,

12  No. 31964-1-II.  *Id.*

13                                          <u>MOTIONS</u>

14        On September 10, 2006, plaintiffs filed a Motion for Declaratory Judgment as Partial Summary

15  Judgment, requesting that this court grant a declaratory judgment, finding that defendants violated

16  plaintiffs' First Amendment right to petition the government for redress of grievances, their Fourteenth

17  Amendment rights, and their rights under Article 1, Section 3 of the Washington Constitution.  Dkt. 64.

18        On September 11, 2006, defendants filed a Motion for Summary judgment, contending that (1)

19  because plaintiffs are not suing any of the defendants in their individual capacity, they have not stated a

20  claim that any of the defendants personally violated their civil rights; (2) the statute of limitations precludes

21  any of the conduct that occurred more than three years before this action was filed; (3) plaintiffs have not

22  stated a *prima facie* case for violation of 42 U.S.C. § 1981; (4) plaintiffs have not stated a *prima facie* case

23  for violation of 42 U.S.C. §1982; (5) plaintiffs have not stated a claim for municipal liability under 42

24  U.S.C. § 1983; (6) plaintiffs have not shown that any of the defendants was involved in a conspiracy

25  actionable under 42 U.S.C. § 1985; (7) there is no private cause of action for damages under the

26  Commerce Clause; (8) the 13th and 14th Amendments to the U.S. Constitution do not give rise to

27  independent causes of action; (8) the Washington Public Records Act, RCW 42.17, does not create an

28  independent cause of action for damages outside of a dispute over access to a specific record; and (9)

1  plaintiffs have not alleged sufficient facts to support a claim for tortious interference with business

2  expectancy.  Dkt. 67.

3       Plaintiffs' motion, while characterized as a motion for declaratory relief, is actually a motion for

4  summary judgment on the claims, requesting judgment on the claims as a matter of law.  Plaintiffs did not

5  bring this case as a declaratory judgment action, nor are the issues presented by plaintiffs in this motion in

6  the nature of a declaration of the rights and other legal relations of the parties.  *See*  28 U.S.C. § 2201.  *See*

7  *also Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688-89 (9th Cir. 1993)(courts must focus upon

8  substance of an asserted claim instead of its form when determining whether to apply statute of limitations

9  in an action requesting declaratory relief). Accordingly, the court has construed plaintiffs' motion for

10  declaratory judgment as partial summary judgment as a motion for partial summary judgment on the issue

11  of liability.

12                                   DISCUSSION

13       **1.  Claim Under Commerce Clause**

14       Plaintiffs claim that defendants violated the Commerce Clause because they have infringed upon

15  plaintiffs' right to travel freely to and from their Wells Road property.  Dkt. 33, at 14.

16       There is no private cause of action for damages under the Commerce Clause.  *See Washington v.*

17  *United States Tennis Association*, 290 F.Supp. 2d 323 (E.D.N.Y. 2003).  Any claim that plaintiffs violated

18  their civil rights pursuant to the Commerce Clause should be brought under 42 U.S.C. § 1983.  To the

19  extent that plaintiffs plead an independent cause of action based upon the Commerce Clause, the claim

20  should be dismissed.

21       **2.  Claims for Violation of Thirteenth and Fourteenth Amendments**

22       Plaintiffs claim that defendants violated the Thirteenth and Fourteenth Amendments by denying

23  plaintiffs their right to due process and equal protection of the laws.  Dkt. 33, at 14-15.  The Thirteenth

24  Amendment does not give rise to an independent cause of action; plaintiffs in discrimination suits must

25  confine themselves to remedies such as 42 U.S.C. § 1981, adopted pursuant to Section 2 of the Thirteenth

26  Amendment.  *See Westray v. Porthole, Inc.*, 586 F.Supp. 834, 839 (D.Md. 1984).  The Fourteenth

27  Amendment does not give rise to a direct claim for money damages.  *See Magana v. Com. of the Northern*

28  *Mariana Islands*, 107 F.3d 1436, 1442 (9th Cir. 1997)(to claim money damages for violations of

Fourteenth Amendment protections, litigants are limited to statutorily authorized relief).  A claim for violation of the Fourteenth Amendment must proceed under 42 U.S.C. § 1983.  *Id.*  To the extent that plaintiffs plead  independent causes of action based upon the Thirteenth and Fourteenth Amendments, the claims should be dismissed.    To the extent that plaintiffs allege violations of the Thirteenth and Fourteenth Amendments under 42 U.S.C. § 1983, these claims are addressed below.

### 3.  Statute of Limitations and Claims Under 42 U.S.C. § 1981, § 1982, § 1983, and § 1985

Defendants contends that any claims under 42 U.S.C. § 1981, § 1983, and § 1985 for conduct that occurred more than three years before plaintiffs filed this civil action are barred by the statute of limitations.

Limitation periods in cases brought under 42 U.S.C.§1983 are determined by reference to the applicable state's statute of limitations and the coordinate tolling rules.  *Rose v. Rinaldi*, 654 F.2d 546 (9th Cir. 1981); *Bianchi v. Bellingham Police Department*, 909 F.2d 1316 (1990).  RCW 4.16.080(2) provides a three year statute of limitations for personal injury to the person or rights of another.  This general statute of limitations for personal injury actions applies to actions brought under 42 U.S.C. § 1981, § 1983 and § 1985.  *Taylor v. Regents of Univ. of Cal.,* 993 F.2d 710, 711-12 (9th Cir.1993).  *See also McDougal v. County of Imperial*, 942 F.2d 668, 673 (9th Cir. 1991).  This rule also applies to claims brought under 42 U.S.C. § 1982.  *See Mitchell v. Sung*, 816 F.Supp. 597, 600  (N.D. Cal. 1993)("because section 1982 does not have a statute of limitations, courts apply the applicable state statute of limitations").

Federal law determines when the claim accrues.  *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 762 (9th Cir. 1991), *cert. denied* 502 U.S. 1091 (1992). Under federal law, a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of the action.  *Id.* at 760; *Cline v. Brusett*, 661 F.2d 108, 110 (9th Cir.1981), *citing Lavelle v. Listi*, 611 F.2d 1129, 1130 (5th Cir. 1980).

The continuing violations doctrine permits a plaintiff to base liability on conduct that occurs beyond the limitations period if the conduct is closely related to allegedly unlawful conduct occurring within the limitations period.  *See Green v. Los Angeles County Superintendent of Schs.,* 883 F.2d 1472, 1480-81 (9th Cir.1989).  However, discrete acts are not actionable if time barred, even if related to acts alleged in timely filed charges. *See National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113-14 (2002);

1  *Carpinteria Valley Farms, Ltd. v. County of Santa Barbara,* 344 F.3d 822, 828-29 (9th Cir.2003); *RK*

2  *Ventures, Inc. v. City of Seattle,* 307 F.3d 1045, 1061-62 (9th Cir.2002).

3         Plaintiffs filed this case on November 14, 2005.  The statute of limitations precludes plaintiffs from

4  pursuing civil rights claims under Sections 1981, 1982, 1983 and 1985 that occurred more than three years

5  before November of 2002.  Plaintiffs contend that defendants violated their civil rights by unlawfully

6  discriminating against them on the basis of race; threatening them with governmental police powers and

7  undue legal proceedings to discourage and prevent them from exercising their civil rights; maintaining a

8  pattern and custom of racial discrimination against African-Americans in general and plaintiffs in particular;

9  conspiring against them to cover up and retaliate against them; depriving them of the use, enjoyment and

10 ownership of the Wells Road property; denying the right to equal utilization of public services; denying

11 them the right to travel freely to and from the Wells Road property, and denying them the right to practice

12 the lawful business of their choice.  Dkt. 33.

13        With the exception of the actions related to the property dispute between plaintiffs and the

14 Hillocks, all of the conduct alleged in the complaint occurred outside the three year statute of limitations.

15 The facts relating to the approval of plaintiffs' sewage system occurred on or before July 19, 2000. The

16 facts relating to the building permit all occurred on or before June 21, 2001. Although plaintiffs stated that,

17 as recently as December 15, 2005, Robert Johnson, Director of Lewis County Community Development

18 has re-confirmed that the building permit was referred to Thurston County for completion of the project,

19 and re-instructed Mr. Beauregard to direct his questions concerning building section services to Thurston

20 County (Dkt. 65, Plaintiffs' Declaration Supporting Declaratory Judgement, ¶ 64), the underlying conduct

21 at issue occurred on or before June 21, 2001.  A 2005 statement referring Mr. Beauregard to Thurston

22 County is insufficient to resurrect claims that occurred prior to the limitations period, and insufficient in

23 itself to state a civil rights claim.  Finally, the incident with the Lewis County permit staff occurred on June

24 8, 2000.

25        Regarding the property dispute, the actions that occurred before November 14, 2002 are also

26 discrete acts that are barred by the statute of limitations.  The actions related to the property dispute that

27 occurred after November of 2002 are not barred by the statute of limitations.

28        Plaintiffs contend that all of the conduct is tied together by an intent to discriminate against them on

the basis of race.  However, the conduct at issue in this case is composed of discrete acts, and plaintiffs

have not shown that these acts are part of a continuing course of conduct.  Although plaintiffs maintain

that all of the acts were motivated by an intent to discriminate against them on the basis of race, they are

still discrete acts, and any actionable conduct must have occurred within the statutory period of limitations.

With the exception of actions of any of the defendants related to plaintiffs' property dispute with

the Hillocks that occurred after November of 2002, the allegations related to plaintiffs' claims under 42

U.S.C. § 1981, § 1982, § 1983, and § 1985 should be dismissed with prejudice as barred by the statute of

limitations.

### 4.  Merits of Claims Under 42 U.S.C. § 1981, § 1982, and § 1985

Assuming that plaintiffs could show that their civil rights claims are not barred by the statute of

limitations, the court will address these claims on the merits.

*Claims under 42 U.S.C. § 1981:*  Plaintiffs claim defendants violated their rights under 42 U.S.C. §

1981 when they retaliated against plaintiffs for complaining that Lewis County employees violated their

civil rights; denied them the right to make, perform, modify and terminate contracts and enjoy the benefits,

privileges, terms and conditions of the contractual relationship, and denied them the right to equal

utilization of public services without unlawful discrimination based upon race or otherwise.  Dkt. 33, at 12-

14.

42 U.S.C. § 1981(a) confers upon all persons the right "to make and enforce contracts, to sue, be

parties, give evidence, and to the full and equal benefits of all laws and proceedings[.]" Section 1981(a)

further provides that all persons shall be subject to like punishment, pains, penalties, taxes, licenses, and

exactions of every kind, and to no other."  In a § 1981 action, plaintiffs must show intentional

discrimination on account of race. *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir.1989).  In order to

establish a prima facie case under § 1981, plaintiffs must prove: (1) that they are members of a racial

minority; (2) that the defendants had an intent to discriminate on the basis of race; and (3) that the

discrimination concerned one or more activities enumerated in the statute.  *Morris v. Office Max, Inc.*, 89

F.3d 411, 413-14 (7th Cir. 1996); *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994).  The

element of intentional discrimination in a § 1981 claim is identical to the element of intentional

discrimination in a § 1983 claim. *Hispanic Taco Vendors of Washington v. City of Pasco*, 790 F.Supp.

1   1023, 1031 (E.D. Wash. 1991), *affirmed, Hispanic Taco Vendors of Washington v. City of Pasco*, 994

2   F.2d 676, 679 n. 3. (9th Cir. 1993).

3       *Claims under 42 U.S.C. § 1982:* Plaintiffs claim that defendants violated their right to full and

4   equal use, enjoyment and ownership of their property, and their right to equal utilization of public services.

5   42 U.S.C. § 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State

6   and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real

7   and personal property." The *prima facie* elements of a 42 U.S.C. § 1982 claim parallel Section 1981 and

8   require that the plaintiffs establish (1) membership in a protected class; (2) discriminatory intent on the part

9   of the defendant; and (3) interference with the rights or benefits connected with the ownership of property.

10  *Daniels v. Dillards, Inc.*, 373 F.3d 885, 887 (8th Cir. (2004).

11      *Claims Under 42 U.S.C. § 1985.* Plaintiffs claim that they have been the targets of a conspiracy

12  and retaliation to deny them the free exercise and enjoyment of their constitutional rights and privileges.

13      To state a claim under 42 U.S.C. § 1985, a plaintiff must demonstrate race or class based animus.

14  *Portman v. County of Santa Clara*, 995 F.2d 898, 909 (9th Cir. 1993); *Bretz v. Kelman*, 773 F.2d 1026,

15  1029-1030 (9th Cir. 1985).

16      *Discussion re: Claims under 42 U.S.C. §§ 1981, 1982, and 1985.* Plaintiffs have shown that they

17  are members of racial minorities. They have not, however, met their burden to show that defendants had

18  an intent to discriminate against them. The actions of defendants upon which plaintiffs rely are not

19  discriminatory on their face. These actions could have been directed toward any individual, whether that

20  individual was a member of a racial minority group or not. Plaintiffs infer that the reason defendants

21  engaged in the conduct alleged was to harass, intimidate, and deny services to them because of their race.

22  There is no objective behavior on the part of defendants that would support plaintiffs' claim that

23  defendants acted with discriminatory motive. Plaintiffs attempt to piece together incidents about which

24  they were dissatisfied (sewer permit, verbal altercation with staff, building permit, police response), and to

25  impute intent to the individuals involved in those situations. Plaintiffs have set forth is no legally admissible

26  evidence to show that any of the defendants intended to discriminate against them on the basis of race.

27      Regarding the specific claims involving the property dispute that are not barred by the statute of

28  limitations, nothing in the record shows that any of the defendants acted with an intent to discriminate

1   against plaintiffs.  During the course of plaintiffs' property dispute with the Hillocks, Sheriff's officers

2   responded to complaints, declined to take sides in the civil dispute, talked to the parties involved, and

3   referred the parties to their attorneys.  The record does not show any conduct on the part of these officers

4   of an intent to discriminate against plaintiffs during the period of time that the officers dealt with the

5   situation.  Further, while Mr. Beauregard states that the deputies refused to honor a court order regarding

6   plaintiffs' rights to the property, the officer involved stated to Mr. Beauregard that the court order, issued

7   in Pierce County, had not been entered into the law enforcement system.  Other than Mr. Beauregard's

8   statement, the record does not show that a court order was in effect when Mr. Beauregard spoke to the

9   officer about it, or the nature of that order.  In fact, plaintiffs state that they have requested review by the

10  Washington Supreme Court.   Plaintiffs have not shown that the officer involved with this incident acted

11  with an intent to discriminate against them.

12         Finally, with regard to plaintiffs' claim that their request in October of 2005 for a road approach

13  permit was denied, plaintiffs have produced no evidence that the decision was motivated by an intent to

14  discriminate against them. Plaintiffs apparently filed an action in Superior Court related to this issue;

15  plaintiffs were denied relief; and the superior court order was affirmed on appeal.

16         Even assuming that plaintiffs' claims under 42 U.S.C. § 1981, § 1982, and § 1985 were not barred

17  by the statute of limitations, defendants have shown that they are entitled to judgment as a matter of law on

18  these claims, and these claims should be dismissed.

19         **5.  Merits of Claims Under 42 U.S.C § 1983**

20         Plaintiffs have named Lewis County and the Lewis County Sheriff's Office as defendants.  They

21  have also named other individuals in their official capacities only.  *See* Dkt. 33.  Plaintiffs contend that

22  defendants violated their rights under Section 1983 by conspiring, covering up, and retaliating against them

23  to deny them the free exercise and enjoyment of their constitutional rights and privileges.  Dkt. 33, at 13.

24  The Section 1983 claim arguably encompasses plaintiffs' claims under the Thirteenth Amendment, the

25  Fourteenth Amendment, and the Commerce Clause.

26         The majority of the incidents that are the basis for the Section 1983 claim are barred by the statute

27  of limitations.  However, even assuming the claims are not barred by the statute of limitations, the Section

28  1983 claims should be dismissed because plaintiffs have not set forth a basis for municipal liability.

42 U.S.C. § 1983 provides a method by which individuals can sue for violations of their federal rights. One of the requisite elements for stating a claim under § 1983 is that the violation was committed by a "person" acting under color of state law. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989). A municipality or other local government entity is deemed such a "person" and may be sued for constitutional torts committed by its officials according to an official policy, practice, or custom. *Monell v. N.Y. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978). In order to set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must show that the defendant's employees or agents acted through an official custom, pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the entity ratified the unlawful conduct. *See Id.; Larez v. City of Los Angeles,* 946 F.2d 630, 646-47 (9th Cir. 1991). The municipal action must be the moving force behind the injury of which plaintiff complains. *Board of County Commissioners of Bryan County v. Brown,* 520 U.S. 397, 405 (1997).

Plaintiffs have not shown that a county policy or custom caused any injury to them. A plaintiff must prove that defendants acted with the intent to discriminate in order to prevail on a Section 1983 claim. *Peters v. Lieuallen,* 746 F.2d 1390, 1393 (9th Cir.1984); *Irby v. Sullivan,* 737 F.2d 1418, 1424 n. 7 (5th Cir.1984). Plaintiffs have not identified any policy that requires, approves of, or permits discrimination on the basis of race, in violation of the Fourteenth Amendment. Moreover, plaintiffs have not shown that it is the custom of county officials to discriminate against individuals on the basis of race because they have not shown that any of the acts of which they complained were motivated by an intent to discriminate against them. The decision of Lewis County officials to contract with Thurston County pursuant to an Interlocal Cooperation Agreement to conduct further inspection services regarding the Wells Road property does not show an intent to discriminate against plaintiffs, particularly since Thurston County had not been involved with plaintiffs prior to the effective date of the contract.

With regard to plaintiffs' claim that defendants violated the Thirteenth Amendment, which abolished slavery, they have not made a *prima facie* showing that the municipality had a policy or custom that caused any violation of the Thirteenth Amendment. Regarding the Commerce Clause claim, plaintiffs have not shown that the municipality had any policy or custom to deny them their right to travel. Finally, plaintiffs have not shown that Lewis County violated their Due Process rights. Plaintiffs have not been happy with some of the decisions of county employees, but they have not shown that they have been

1   deprived of Due Process in regard to the water permit, the building permits, or the property dispute.

2   Moreover, plaintiffs have accessed the courts to assert their rights.

3       Plaintiffs state that "[t]he white property owners of the two other properties...[302 Wells Road and

4   340 Wells Road] both have personally and directly informed Eugene Beauregard that they are not given to

5   the same scrutiny and are not held to the same building section services standards that are imposed on

6   Beauregard by the Lewis County government."  Dkt. 33, at 55.  Plaintiffs state that the two other owners

7   of property on Wells Road, who are White, have not been required to meet requirements for water, even

8   though those properties have had substantial building projects and improvements made to the property.

9   Defendants have submitted evidence from the public record showing that other properties on Wells Road

10  have been subject to relevant permit approval procedures.  See Dkt. 75, Declaration of Fred Chapman, at

11  3; Dkt. 75, Exh. 6.  Further, the structure at 302 Wells Road was, according to plaintiffs' materials, was

12  constructed in 1925, when no building permit or other requirements would have been necessary.  Other

13  statements allegedly made to Mr. Beauregard are hearsay and do not meet the requirements for responding

14  to a motion for summary judgment under Fed.R.Civ.P. 56.

15      Defendants are entitled to judgment as a matter of law on claims plaintiff has made under 42 U.S.C.

16  § 1983.

17      **6. State law claim under RCW 42.17, the Washington Public Records Act**

18      Plaintiffs state that defendants violated the Washington Public Records Act, RCW 41.17 by

19  maliciously withholding public documents from plaintiffs and have manipulated custody of public

20  documents in a continuing effort to conceal evidence of civil rights and other violations.

21      If a person has "been denied an opportunity to inspect or copy a public record by an agency, the

22  superior court in the county in which a record is maintained may require the responsible agency to show

23  cause why it has refused to allow inspection or copying of a specific public record or class or records."

24  RCW 42.56.550(1).  To the extent that plaintiffs believe that certain documents were withheld from them

25  improperly on the basis of attorney client privilege, they had the option of availing themselves of a remedy

26  in the Superior Court of the State of Washington.  The Public Records Act does not provide for cause of

27  action under that Act if a person believes the records are in error.  This claim should be dismissed.

28      **7. State law claim for tortious interference with plaintiffs' economic and business**

1  **expectancy**

2        Plaintiffs claim that defendants have intentionally and wrongfully interfered with plaintiffs'

3  economic advantage and business expectancy.

4        To establish a claim for tortious interference with business expectancy, a plaintiff must allege: (1)

5  the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge

6  of that relationship; (3) an intentional interference inducing or causing a breach or termination of the

7  relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means;

8  and (5) resultant damages. *Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 28 (1992), citing *Pleas v. Seattle*,

9  112 Wash.2d 794, 800, 804 (1989). This claim is governed by a three year statute of limitations. *City of*

10  *Settle v. Blume*, 134 Wn.2d 243, 251 (1997).

11        Any conduct that occurred prior to November of 2002 is barred by the statute of limitations.

12  Moreover, to the extent that the claims are not barred by the statute of limitations, plaintiffs have not

13  shown that defendants had knowledge of a business expectance, nor have they shown that defendants

14  interfered for an improper purpose or used improper means.  Defendants are entitled to judgment as a

15  matter of law on this claim, and the claim should be dismissed.

16        **8.  Article 1, Section 3 of the Washington Constitution**

17        It appears that plaintiffs are requesting relief for violation of their rights to due process under the

18  Washington Constitution.  Article 1, Section 3 of the Washington Constitution provides that "[n]o person

19  shall be deprived of life, liberty, or property, without due process of law."

20        The guarantee of due process under Article 1, Section 3 does not of itself, without the aid of

21  augmenting legislation, establish a cause of action for money damages against the state or a municipality in

22  favor of any person alleging deprivation of property without due process. *Spurrell v. Block*, 40 Wn.App.

23  854, 862, *review denied* 104 Wn.2d 1014 (1985).  This claim should be dismissed.

24        Therefore, it is hereby

25        **ORDERED** that Plaintiffs' Motion for Declaratory Judgment as Partial Summary Judgment (Dkt.

26  64) is **DENIED**.  Defendants' Motion for Summary judgment (Dkt. 67) is **GRANTED.**  This case is

27  **DISMISSED WITH PREJUDICE**.

28        The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any

ORDER
Page - 18

party appearing *pro se* at said party's last known address.

DATED this 10th day of October, 2006.


ROBERT J. BRYAN
United States District Judge